**Office of Disciplinary Counsel v. Papas**

90

Disciplinary Board Docket nos. 12 D.B. 2003, 80 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

NEWMAN, *Member,* April 11, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disci-

plinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 4, 2003, Office of Disciplinary Counsel filed a petition for discipline at no. 12 D.B. 2003 against respondent, William Emanuel Papas. Office of Disciplinary Counsel filed a petition for discipline against respondent at no. 80 D.B. 2003 on June 5, 2003. A motion to consolidate petitions was granted by order of the Disciplinary Board dated August 22, 2003. These petitions charged respondent with representing clients while on inactive status. Respondent did not file an answer to petitions.

A disciplinary hearing was held on November 14, 2003, before Hearing Committee 4.05 comprised of Chair Sheila M. Ford, Esquire, and Members Marion Laffey Ferry, Esquire and James T. Marnen, Esquire. Respondent appeared pro se.

The Hearing Committee filed a report on October 12, 2004, finding that respondent violated the Rules of Professional Conduct and Rules of Disciplinary Enforcement as charged in the petitions, and recommending that respondent be suspended for one year and one day.

This matter was adjudicated by the Disciplinary Board at the meeting of January 19, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, Office of Disciplinary Counsel, whose principal office is located at Suite 1400, 200 North Third

Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, William Emanuel Papas, was born in 1953 and was admitted to practice law in the Commonwealth of Pennsylvania in 1979. Respondent's attorney registration address is 165 Arla Drive, Pittsburgh PA 15220. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has a prior history of discipline. He was suspended from the practice of law from April 20, 1988 to February 10, 1989, as a result of his conviction of possession of cocaine and marijuana and possession of drug paraphernalia.

(4) By order of the Pennsylvania Supreme Court dated March 17, 2000, with an effective date of April 18, 2000, respondent was transferred to inactive status as a result of his noncompliance with Continuing Legal Education requirements.

*Turban Matter*

(5) While on active status respondent was retained in March of 1999 to represent Jack L. Turban in an appeal to the Court of Common Pleas of Butler County.

(6) Respondent was paid $250 for his representation.

(7) On March 31, 1999, respondent filed a notice of appeal. On April 21, 1999, respondent filed a civil complaint on behalf of his client.

(8) Respondent was listed as counsel of record for Mr. Turban with his office listed as 165 Arla Drive, Pittsburgh PA 15220.

(9) On May 10, 1999, Attorney Ronald W. Coyer, counsel for defendant, filed a praecipe to strike the appeal pursuant to Pennsylvania District Justice Rule of Civil Procedure 1006.

(10) The proof of service attached to Attorney Coyer's pleading reflects the copy was mailed to respondent at his listed address.

(11) Respondent did not file any responsive pleading to the praecipe to strike.

(12) On May 10, 1999, the Butler County Prothonotary struck the appeal filed by respondent on behalf of his client.

(13) Respondent did not inform his client that the appeal had been stricken, nor did he take any action to have the appeal reinstated.

(14) Although the appeal had been stricken and the case closed, respondent, in response to a request by Mr. Turban regarding the status of the appeal, informed Mr. Turban that an additional $50 was needed to schedule a hearing before a Butler County Court of Common Pleas Board of Arbitrators.

(15) Mr. Turban paid the additional $50 to respondent.

(16) Thereafter respondent did not communicate with Mr. Turban in any manner regarding the status of the case, despite Mr. Turban's attempts to contact him.

(17) Respondent's effective date of transfer to inactive status was April 18, 2000. By letter dated March 17, 2000, from the secretary of the Disciplinary Board, respondent was provided with a copy of the Supreme Court's March 17, 2000 order, and informed of his rights and obligations pursuant to the Rules of Disciplinary Enforcement and the Disciplinary Board Rules.

(18) The March 17, 2000 letter was sent by certified mail, return receipt requested.

(19) The green postal return receipt card bears a signature accepting the certified mailing and a delivery date of March 20, 2000 to respondent's address at 165 Arla Drive in Pittsburgh.

(20) At no time did respondent inform Mr. Turban of his transfer to inactive status.

(21) Respondent has not been reinstated to active status in Pennsylvania.

(22) By letter to respondent dated March 13, 2001, Attorney Paul Yessler, on behalf of Mr. Turban, requested that respondent contact him regarding Mr. Turban's case; that respondent refund Mr. Turban's money; and that respondent return Mr. Turban's file to him.

(23) Respondent did not contact Attorney Yessler, nor did he refund Mr. Turban's money or return Mr. Turban's file.

### *Koutsouflakis Matter*

(24) On August 15, 2000, respondent accepted $540 from George Koutsouflakis to represent him in a civil name change matter.

(25) On respondent's letterhead dated August 15, 2000, respondent provided Mr. Koutsouflakis with a signed fee agreement reflecting the $540 fee for representation.

(26) On August 17, 2000, respondent faxed Mr. Koutsouflakis a proposed petition to change name for his review and signature.

(27) Throughout the summer, fall and winter of 2000, respondent did not communicate with Mr. Koutsouflakis regarding his matter.

(28) At no time did respondent inform Mr. Koutsouflakis that he was on inactive status and could not represent him.

(29) In April 2001 respondent communicated with his client and stated that he would fax him documents for his review.

(30) Mr. Koutsouflakis never received a fax from respondent.

(31) In June 2001 respondent left a message for Mr. Koutsouflakis indicating that he had filed a petition for name change in the Allegheny County Court of Common Pleas and that he would communicate with Mr. Koutsouflakis once he received a hearing date.

(32) Respondent faxed a copy of the pleading bearing his signature.

(33) Mr. Koutsouflakis by certified letter dated June 28, 2001, informed respondent that he had personally reviewed the Allegheny County Court of Common Pleas records and determined that no pleading had been filed and demanded that respondent refund the money he had previously paid to respondent as he no longer wanted respondent to represent him.

(34) Mr. Koutsouflakis received full reimbursement from respondent.

### Wolfram Matter

(35) At the time of his transfer to inactive status, respondent was counsel of record for Steven Wolfram in a domestic matter in the Allegheny County Court of Common Pleas.

(36) Respondent did not inform Mr. Wolfram, the court or opposing counsel that he had been transferred to inactive status.

(37) On April 18, 2000, respondent and Mr. Wolfram attended a support conference on the issue of alimony pendente lite.

(38) The April 18, 2000 support conference was that same day continued to August 1, 2000, and the continuance order was signed by respondent as counsel for Mr. Wolfram.

(39) Following the April 18, 2000 conference, respondent was paid an additional sum of $300 by Mr. Wolfram which was to be divided in equal parts for the support conference and for the presentation of a motion before the Family Division motions judge.

(40) On May 25, 2000, respondent appeared before Judge Lawrence W. Kaplan and presented a motion on behalf of his client requesting an evidentiary hearing.

(41) The pleading presented to Judge Kaplan contained a verification signed by respondent that the statements contained in the motion were true and correct.

(42) That same pleading averred that respondent was counsel of record for Mr. Wolfram.

(43) On August 1, 2000, respondent again represented Mr. Wolfram at a support conference/hearing before a Domestic Relations Officer at which time respondent signed an order of court as counsel for Mr. Wolfram.

### Fischer Matter

(44) At the time of his transfer to inactive status, respondent was listed as counsel of record for George Fischer III, in a domestic relations matter filed in the Allegheny County Court of Common Pleas.

(45) Respondent did not notify his client, the court or opposing counsel of his transfer to inactive status on April 18, 2000.

(46) Following his transfer to inactive status, respondent on October 18, 2001, witnessed and signed a property settlement agreement executed by the Fischers wherein it was written that Mr. Fischer had been advised of his legal rights and obligations by his respective counsel.

(47) Respondent executed the documents as William E. Papas, Esq., then filed or caused to be filed the same with the Allegheny County Court of Common Pleas on November 1, 2001.

(48) Respondent, also on November 1, 2001, filed or caused to be filed with the Allegheny County Court of Common Pleas, waivers of notice and affidavits of consent wherein respondent is listed as counsel of record for George Fischer.

### Konkiel/Jones Matter

In April 2001, respondent met with Gregory Jones and Lisa Konkiel regarding their uncontested divorce, and agreed to represent the couple.

(50) Respondent was paid $200.

(51) At the time of the meeting, respondent did not inform either Ms. Konkiel or Mr. Jones of his inability to practice law as a result of his inactive status.

(52) Following the April 2001 meeting, respondent, on May 7, 2001, filed a complaint in divorce in the Allegheny County Court of Common Pleas.

(53) The divorce complaint cover sheet lists respondent as counsel of record and bears his signature as counsel for plaintiff, Gregory P. Jones.

(54) In February 2002, respondent again met with Mr. Jones and Ms. Konkiel, at which time he accepted an additional $200.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(2) R.P.C. 1.4(a)—A lawyer shall keep a client informed of the status of a matter and promptly comply with reasonable requests for information.

(3) R.P.C. 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding representation.

(4) R.P.C. 1.16(d)—Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

(5) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(6) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(7) R.P.C. 5.5(b)—A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

(8) Pa.R.D.E. 217(a)—A formerly admitted attorney shall promptly notify, by registered or certified mail, return receipt requested, all clients being represented in pending matters, other than litigation or administrative proceedings, of the disbarment, suspension or transfer to inactive status and the consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the disbarment, suspension or transfer to inactive status and shall advise clients to seek legal advice elsewhere.

(9) Pa.R.D.E. 217(b)—A formerly admitted attorney shall promptly notify, by registered or certified mail, return receipt requested, all clients who are involved in pending litigation or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceedings, of the inability of the formerly admitted attorney to act as an attorney after the effective date of the disbarment, suspension or transfer to inactive status.

(10) Pa.R.D.E. 217(d)—Orders imposing transfer to inactive status shall be effective 30 days after entry. The formerly admitted attorney, after entry of the transfer to inactive status order, shall not accept any new retainer

or engage as attorney for another in any new case or legal matter of any nature.

## IV. DISCUSSION

This matter is before the board on consolidated petitions for discipline charging respondent with professional misconduct resulting from his representation of clients while on inactive status. Respondent stipulated to the facts of the matter and did not object to any of the exhibits offered by petitioner into evidence. Respondent did not present any evidence with regard to petitioner's case in chief and admitted that he violated the Rules of Professional Conduct and Rules of Disciplinary Enforcement.

While still on active status in March 1999, respondent engaged in various acts of client neglect, consisting of failing to communicate with his client Jack Turban, failing to diligently represent him, failing to refund unearned fees and engaging in conduct involving dishonesty and misrepresentation, all of which prejudiced Mr. Turban. During his representation of Mr. Turban, respondent was transferred to inactive status for failing to fulfill his Continuing Legal Education requirements. Despite receiving the order of the Supreme Court notifying him of his inactive status, respondent continued to practice law after April 16, 2000, the effective date of the order. Not only did respondent fail to notify his existing client that he had been transferred to inactive status, he continued to violate the order by accepting new cases, filing pleadings, appearing in court and representing clients.

Respondent's misconduct warrants the imposition of public discipline. He ignored his responsibilities to his

clients and the court by continuing to practice law in defiance of a court order. He accepted money from unsuspecting clients whom he was not permitted to represent. Respondent accepted full responsibility for his misconduct and offered in mitigation the fact that his wife died in December 2002 and he was left with the sole responsibility for two minor children. Obviously these are extreme personal problems, although the board notes that the misconduct in question occurred prior to these unfortunate circumstances. There are aggravating factors that exist in this matter. Paramount is respondent's prior suspension from April 20, 1988 to February 10, 1989, for a criminal conviction involving cocaine. The board finds troubling the fact that 10 years after he was reinstated to practice, respondent was engaging in professional misconduct by ignoring the Supreme Court's March 17, 2000 order.

Sanctions imposed by the Supreme Court for practicing while on inactive status have ranged from a six-month suspension to the unusually severe sanction of disbarment. See *In re Anonymous No. 123 D.B. 1996*, 41 D.&C.4th 290 (1998); *In re Anonymous Nos. 78 D.B. 1984 and 38 D.B. 1985*, 39 D.&C.3d 131 (1986). More recently, unauthorized practice of law cases have resulted in suspensions of one year and one day. *Office of Disciplinary Counsel v. Rodney*, No. 118 D.B. 2000, 743 Disciplinary Docket no. 3 (Pa. June 13, 2002), resulted in a suspension of one year and one day for respondent after he practiced law in two cases after his transfer to inactive status. In the matter of *Office of Disciplinary Counsel v. Harrigan*, No. 123 D.B. 2000, 782 Disciplinary Docket no. 3 (Pa. Nov. 25, 2002), the Supreme Court suspended Mr. Harrigan for one year and one day for

representing a client after he was notified he had been transferred to inactive status. Mr. Harrigan had two prior informal admonitions, one of which was for practicing while on inactive status. Mr. Harrigan presented evidence of a psychiatric problem which was accepted as mitigation. A lawyer who practiced law for 12 years while on inactive status was suspended for one year and one day. *Office of Disciplinary Counsel v. Forman,* No. 70 D.B. 2001, 799 Disciplinary Docket no. 3 (Pa. Jan. 31, 2003).

Review of the record and the case law persuades the board that a suspension of one year and one day is appropriate. This sanction will require respondent to petition for reinstatement and prove his fitness and character before he is allowed to practice law in Pennsylvania.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, William Emanuel Papas, be suspended from the practice of law for a period of one year and one day.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Vice-Chair Rudnitsky and Board Member O'Connor dissented and would recommend a two-year suspension.

## DISSENTING OPINION

O'CONNOR, *Member,* April 11, 2005—I have reviewed the report and recommendations of the majority

in the above matter, and while agreeing with the findings, I respectfully dissent from the recommendation of only a year and a day suspension.

Mr. Papas had previously been suspended for about one year in the late 1980s. It should be presumed that when a lawyer serves a suspension and is readmitted to practice, he will be more attentive to the Rules of Professional Conduct. In Mr. Papas' case, that does not seem to be true.

Mr. Papas engaged in misconduct including client neglect, dishonesty and misrepresentation, any one of which should have earned him a suspension. In addition, on at least four occasions after being aware that his license to practice was suspended for failure to complete his Continuing Legal Education, Mr. Papas continued to represent clients, accept fees, appear in court, sign legal documents and hold himself out as a licensed practitioner, something which he knew was not true.

A review of the record reflects that Mr. Papas made no effort to comply with his obligations under Pa.R.D.E. 217(a)(b) and (d). He had and used his office letterhead, maintained an office, and apparently went on as if the rules did not apply to him.

The rules required Mr. Papas to notify his clients of his suspension. He failed to do this, ignoring his obligation and showing his continued disregard for the law.

Historically, the offense of practicing while under suspension is enough to merit the "year and a day" but when the additional charges of client neglect, dishonesty and misrepresentation are added it would seem as though this case merits additional time.

Had this been Mr. Papas' first brush with the disciplinary system I may have been prevailed to vote with the majority but it was not. He was flat out ignoring the rules and he should have known better.

I would respectfully recommend a more proper resolution would be a two-year suspension.

Board Chair Rudnitsky joins in this dissent.

### ORDER

And now, September 12, 2005, upon consideration of the report and recommendations of the Disciplinary Board and dissenting opinion dated April 11, 2005, it is hereby ordered that William Emanuel Papas be and he is suspended from the bar of this Commonwealth for a period of two years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.